**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JUANITA DANZY,<br><br>Plaintiff,<br><br>v.<br><br>COLOPLAST CORP.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:19cv1017 |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on two sealing motions ("Sealing Motions"), (1) "Joint Motion to Seal and File Substitute Documents and Brief in Support" (Docket Entry 74) ("First Sealing Motion"), and (2) "Plaintiff's Unopposed Motion to Seal and File Substitute Documents and Brief in Support" (Docket Entry 97) ("Second Sealing Motion"). For the reasons that follow, the Court will deny the First Sealing Motion and deny without prejudice the Second Sealing Motion.

**BACKGROUND**

On March 2, 2022, together with a motion to exclude or limit the opinions and testimony of one of Defendant's experts, Dr. Benny Freeman (see Docket Entry 63), Plaintiff filed, on the public docket, a supporting memorandum and related exhibits (see Docket Entries 65 ("Expert Memorandum"), 65-1 ("Freeman Report"), 65-2 ("Freeman Deposition")). On March 31, 2022, via the First Sealing Motion, Plaintiff sought to seal the Expert Memorandum, Freeman Report, and Freeman Deposition. (See Docket Entry 74.) In connection with that request, Plaintiff asked to "substitute into

the [public] record redacted versions of [the Expert Memorandum, Freeman Report, and Freeman Deposition] . . . ." (Id. at 2.)

The following day, via the Second Sealing Motion, Plaintiff sought to seal seven exhibits (Docket Entries 95-6, 95-7, 95-8, 95-9, 95-10, 95-11, 95-2 ("Plaintiff's Exhibits")) filed contemporaneously with her memorandum (Docket Entry 94) opposing the motion for summary judgment by Defendant (Docket Entry 66). (See Docket Entry 97.) However, only slip sheets appear in place of Plaintiff's Exhibits on the public docket (see Docket Entries 95-6, 95-7, 95-8, 95-9, 95-10, 95-11, 95-12), and no sealed, unredacted versions of Plaintiff's Exhibits appear elsewhere on the docket (see Docket Entries dated Apr. 1, 2022, to present).

Although Plaintiff filed the Sealing Motions, at least the First Sealing Motion suggests that Defendant possesses an interest in the confidentiality of some information in the Expert Memorandum, Freeman Report, and Freeman Deposition. (See Docket Entry 74 at 1 (characterizing First Sealing Motion as "joint motion to seal"), 2 (explaining that Defendant alerted Plaintiff, post-filing, to sensitive nature of pertinent information).) However, Defendant has not filed any materials in support of the First Sealing Motion (or, to the extent Defendant wishes to protect some or all of Plaintiffs' Exhibits from disclosure, the Second Sealing Motion). (See Docket Entries dated Mar. 31, 2022, to present.) For her part, Plaintiff has filed only duplicate copies of the Agreed Protective Order (see Docket Entries 74-1, 97-1), which the

Court (per the undersigned United States Magistrate Judge) entered on August 14, 2020 (see Docket Entry 29).

## DISCUSSION

### I. Relevant Standards

Under Federal Rule of Civil Procedure 26 ("Rule 26"), "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 provides for "[l]iberal discovery . . . for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The liberal scope of discovery necessitates that the Court "have the authority to issue protective orders conferred by Rule 26(c)." Id. Such an order may "limit[] the scope of disclosure or discovery" or require the sealing of certain materials. Fed. R. Civ. P. 26(c)(1).

"However, the authority granted to a court under Rule 26(c) to require special handling of information gathered during discovery is constrained by the public's right of access to judicial records." Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08CV918, 2010 WL 1418312, at *7 (M.D.N.C. Apr. 2, 2010) (unpublished).[1]

[1] "This constraint arises because '[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern.'" Kinetic Concepts, 2010 WL 1418312, at *7 (quoting Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (continued...)

"[T]wo independent sources" provide the public with such a right: "the common law and the First Amendment." Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "[Whereas] the common[-]law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)); see also United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003) ("Some . . . documents fall within the common[-]law presumption of access, while others are subject to the greater right of access provided by the First Amendment.").

One or both of those rights of access may apply to discovery materials (even when subject to a Rule 26(c) protective order) if such materials "constitute 'judicial documents and records.'" Kinetic Concepts, 2010 WL 1418312, at *7 (quoting Stone, 855 F.2d at 180). Importantly, that designation requires more than "the mere filing of a document with a court." Spear v. Ernst & Young (In re Policy Mgmt. Sys. Corp.), Nos. 94-2254, 2341, 67 F.3d 296 (table), 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished). To qualify as judicial records, documents must "play a role in the adjudicative process, or adjudicate substantive rights." United States v. Appelbaum (In re United States), 707

[1](...continued)
(1978)).

F.3d 283, 290 (4th Cir. 2013); see also Level 3 Commc'ns, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 576 (E.D. Va. 2009) (discussing public right of access to "materials that have been submitted to courts in connection with civil pleadings or motions (dispositive or otherwise) or entered by courts into evidence in the course of hearings or trial, whatever the materials' origins or pre-trial confidentiality status might previously have been").

When no public right of access applies, Rule 26(c)'s "good cause" standard governs the request to seal or redact discovery material. See Hatch v. Demayo, No. 1:16CV925, 2020 WL 6161533, at *6 (M.D.N.C. Oct. 21, 2020) (unpublished). Under that standard, "[t]he [C]ourt may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). When a party proposes to seal judicial records to which a public right of access applies, the Court begins by "determin[ing] the source of the right of access with respect to each document," as "only then can it accurately weigh the competing interests at stake." Virginia Dep't of State Police, 386 F.3d at 576 (internal quotation marks omitted). "Th[e common-law] presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988). The relevant factors include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an

important historical event; and whether the public has already had access to the information contained in the records." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). Under the more stringent first-amendment standard, the Court may seal material "only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly tailored to serve that interest." Stone, 855 F.2d at 180. "The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003).

Under either the common-law or first-amendment standard, the Court evaluates the competing interests according to the following procedure. First, "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request." Virginia Dep't of State Police, 386 F.3d at 576. Next, "it must consider less drastic alternatives to sealing." Id. Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." Id. Those steps "ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." Id.

The legal framework described above also applies to requests by a party to file a redacted document, i.e., a document sealed in part. See Moussaoui, 65 F. App'x at 889 ("As to those documents subject to a right of access, [the court] must then conduct the appropriate balancing to determine whether the remainder of the

document should remain sealed, in whole or in part."); see also Bethesda Softworks, LLC v. Interplay Ent. Corp., Civ. Action No. 09-2357, 2010 WL 3781660, at *9-10 (D. Md. Sept. 23, 2010) (unpublished) (treating motion to redact transcript as motion to seal). "The interest of the public in the flow of information is protected by [the Court's] exercis[e of] independent judgment concerning redactions." Moussaoui, 65 F. App'x at 888 (citing United States v. Pelton, 696 F. Supp. 156, 159 n. 2 (D. Md. 1986) (noting that court would "carefully compare the redacted version [of a transcript] to the unredacted version for accuracy and to determine whether all the proposed deletions are necessary")).

Under this Court's Local Rules, "[n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support . . . ." M.D.N.C. LR 5.4(c)(3). Such support may include "affidavits or declarations" as well as "citation[s] to any supporting statutes, case law, or other authority," id. "If the filing party is the party claiming confidentiality, the [foregoing] materials . . . must be filed with the motion to seal." M.D.N.C. LR 5.4(c)(4)(a). However, "[i]f the filing party is not the party claiming confidentiality or is not claiming it as to all of the items, the filing party should so note, and the party claiming confidentiality must file a response within 14 days of the motion to seal that includes the materials required by LR 5.4(c)(3)." M.D.N.C. LR 5.4(c)(4)(b). Failure by a party claiming

confidentiality to file materials in support of a request to seal "will result in denial of the motion to seal and unsealing of the materials without further notice." M.D.N.C. LR 5.4(c)(3). Additionally, "[a] party who files a motion to seal must submit a . . . Checklist and Summary Chart," see M.D.N.C. LR 5.4(c)(6), which includes (among other things) a sealed, highlighted version of publicly filed, redacted documents that reveals the content of the proposed redactions. M.D.N.C. LR 5.4 comment. Finally:

> Until the Court rules on the motion to seal, the underlying documents for which sealing is sought shall be filed under temporary seal. To provide clarity on the CM/ECF docket, the filing party must file two complete sets of documents, one public and one under temporary seal. The public version must have placeholders or redactions for each item for which sealing is sought. The version filed under temporary seal must be a complete set which includes all exhibits, even those not subject to the motion to seal, and the information sought to be sealed must be highlighted.

M.D.N.C. LR 5.4(c)(8).

## II. Analysis

### A. First Sealing Motion

With respect to the First Sealing Motion, Plaintiff has sought to filed substituted, redacted versions of the Expert Memorandum, Freeman Report, and Freeman Deposition. (See Docket Entry 74 at 2; see also Docket Entries 74-2, 74-3, 74-4.) In support of that request, Plaintiff has contended that "[t]his is a complex products liability action involving transvaginal mesh implanted in Plaintiff for the treatment of stress urinary incontinence. The parties agree that this action involves the exchange of certain sensitive, confidential, and private information that require[s] special

protection from public disclosure." (Docket Entry 74 at 1.) Additionally, Plaintiff has relied on the fact that "the parties agreed to an Agreed Protective Order on August 14, 2020." (Id.)

As a threshold matter, Plaintiff has not identified what, if any, public-access right applies to the Expert Memorandum, Freeman Report, and Freeman Deposition. (See Docket Entry 74 at 1-2.) A neighboring court has applied the common-law standard when evaluating a request to seal documents filed in connection with a motion in limine. See Lord Corp. v. S & B Tech. Prods., Inc., No. 5:09CV205, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012) (unpublished).

Regardless of the applicable standard, the First Sealing Motion merits denial for three reasons. First, in violation of this Court's Local Rule 5.4(c)(3), Plaintiff has offered no evidentiary support for her request to seal. (See Docket Entry 74 at 1-2.) To the extent Plaintiff has suggested that the Agreed Protective Order alone demonstrates the need for sealing (see id.; see also Docket Entry 74-1), that argument falls short because the interest in protecting discovery material (subject to the good-cause standard of Rule 26(c)) cannot categorically overcome the public interest in access to judicial records. See Kinetic Concepts, 2010 WL 1418312, at *7.

Second, the public has enjoyed unfettered access to the entire Expert Memorandum, Freeman Report, and Freeman Deposition since March 2, 2022. (See Docket Entries 74-2, 74-3, 74-4.) Plaintiff has neither acknowledged that public disclosure nor explained why

the circumstances nonetheless warrant (belated) sealing (see Docket Entry 74 at 1–2). See In re Knight Publ'g Co., 743 F.2d at 235 (explaining that "whether the public has already had access to the information contained in the records" constitutes one factor under common-law analysis); see also Morris Hatchery, Inc. v. Interlink Grp. Corp. USA, Inc., No. 10-24480-CIV, 2012 WL 13012495, at *2-3 (S.D. Fla. Apr. 16, 2012) (unpublished) (denying request to seal depositions and filings "quoting those depositions," which allegedly revealed trade secrets, when requesting party failed to explain, inter alia, "why the entire depositions were filed in the public record" or "why nearly two months passed before [the party] asked the [c]ourt to go back and seal those public filings").

Third, Plaintiff has failed to submit a checklist and summary chart, as required by this Court's Local Rule 5.4(c)(6), including sealed, highlighted versions of the Expert Memorandum, Freeman Report, and Freeman Deposition. See also M.D.N.C. LR 5.4(c)(8) (requiring submission of publicly filed, redacted document as well as sealed, highlighted document indicating proposed redactions). Therefore, the Court will deny the First Sealing Motion.

**B. Second Sealing Motion**

Via the Second Sealing Motion, Plaintiff (with Defendant's consent) has sought to shield Plaintiff's Exhibits from public disclosure, offering justifications that mirror the First Sealing Motion. (Compare Docket Entry 97 at 1–2, with Docket Entry 74 at 1–2.) However, in contravention of this Court's Local Rule 5.4(c)(8), Plaintiff failed to provide sealed, unredacted versions

of Plaintiff's Exhibits for the Court's review, opting instead to file only slip sheets on the public docket. (See Docket Entries 95-6, 95-7, 95-8, 95-9, 95-10, 95-11, 95-12.) Without access to Plaintiff's Exhibits, the Court cannot determine whether a basis for sealing exists. Moreover, as with the First Sealing Motion, no party has offered the evidentiary support required by this Court's Local Rules (see Docket Entry 97 at 1–2) or filed the required checklist and summary chart. As previously discussed, the mere existence of the Agreed Protective Order provides an inadequate basis for sealing (especially because the first-amendment standard governs the request to seal Plaintiff's Exhibits, which Plaintiff filed in opposition to a dispositive motion). See Kinetic Concepts, 2010 WL 1418312, at *7. Because lack of access to Plaintiff's Exhibits prevented meaningful evaluation of the request to seal, the Court will deny the Second Sealing Motion without prejudice.

**CONCLUSION**

Violations of this Court's Local Rules, to include disregard of the requirement that a party offer evidentiary support in connection with a request to seal, warrant denial of the Sealing Motions. The First Sealing Motion suffers an additional flaw, given that weeks elapsed before Plaintiff requested to redact documents filed on the public docket. Finally, the failure by Plaintiff to file Plaintiff's Exhibits, the subject of the Second Sealing Motion, under temporary seal obviated the need for sealing at this time.

**IT IS THEREFORE ORDERED** that the First Sealing Motion (Docket Entry 74) is denied.

**IT IS FURTHER ORDERED** that the Second Sealing Motion (Docket Entry 97) is denied without prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 4, 2022