IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JUANITA DANZY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19cv1017 |
| | ) | |
| COLOPLAST CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on "Defendant Coloplast Corp.'s Unopposed Motion for Reconsideration of the Court's Order (ECF 113) Denying Plaintiff's Motions to Seal (ECF 74, 97) and File Substitute Documents, and For Leave to File Exhibits in Accordance with Local Rule 5.4(c)(6)" (Docket Entry 114 (the "Reconsideration Motion")). For the reasons that follow, the Court will grant the Reconsideration Motion in part, such that the Court will revisit its prior rulings and allow the parties to tender certain additional documents, but will deny the Reconsideration Motion as it relates to all other requests for relief.

## BACKGROUND

The Court (per the undersigned United States Magistrate Judge) recently denied two sealing motions (see Docket Entries 74 (the "Joint Sealing Motion"), 97 ("Plaintiff's Unopposed Sealing Motion") (collectively, the "Sealing Motions")). (See Docket Entry

113 (the "Order") at 12 (denying Joint Sealing Motion and denying without prejudice Plaintiff's Unopposed Sealing Motion).)[1]

The Joint Sealing Motion made a belated request to (i) seal three documents that Plaintiff had filed on the public docket in connection with a motion in limine (see Docket Entries 65 (the "Expert Memorandum"), 65-1 (the "Freeman Report"), 65-2 (the "Freeman Deposition")) and (ii) replace those documents with redacted versions of the same (see Docket Entries 74-2, 74-3, 74-4). (See Docket Entry 74 at 2.) In support of that request, "Plaintiff [] filed only [a] duplicate cop[y] of the Agreed Protective Order" (Docket Entry 113 at 2 (referencing Docket Entry 74-1)), as well as proposed redacted versions of the Expert Memorandum (see Docket Entry 74-2), Freeman Report (see Docket Entry 74-3), and Freeman Deposition (see Docket Entry 74-4). As grounds for denying the Joint Sealing Motion, the Order explained that (A) "Plaintiff ha[d] offered no evidentiary support for her request to seal" (Docket Entry 113 at 9; see also id. (deeming Agreed Protective Order insufficient to support sealing request)), (B) "the public ha[d] enjoyed unfettered access to the entire Expert Memorandum, Freeman Report, and Freeman Deposition since March 2, 2022" (id.), and (C) "Plaintiff ha[d] failed to submit a

---

[1] The Order described the Sealing Motions as the First Sealing Motion and Second Sealing Motion, respectively. (See Docket Entry 113 at 1.) In the interest of greater precision, this Opinion labels the Sealing Motions as joint and unopposed, respectively. (See Docket Entry 74 at 1 ("Joint Motion to Seal and File Substitute Documents and Brief in Support" (all-caps font omitted)); Docket Entry 97 at 1 ("Plaintiff's Unopposed Motion to Seal and File Substitute Documents and Brief in Support" (all-caps font omitted)).)

checklist and summary chart, as required by this Court's Local Rule 5.4(c)(6), including sealed, highlighted versions of the Expert Memorandum, Freeman Report, and Freeman Deposition" (id. at 10). The Order also noted that Plaintiff had not identified the source of any applicable public-access right (see id. at 9) and that Defendant had failed to "file[] any materials in support of the [Joint] Sealing Motion" (id. at 2 (citing Docket Entries dated Mar. 31, 2022, to May 4, 2022)).

Plaintiff's Unopposed Sealing Motion pertained to seven slip sheets (Docket Entries 95-6, 95-7, 95-8, 95-9, 95-10, 95-11, 95-12 ("Plaintiff's Exhibits")) that Plaintiff submitted in connection with her memorandum (Docket Entry 96 (the "Summary Judgment Memorandum")) opposing the motion for summary judgment by Defendant (Docket Entry 66). (See Docket Entry 97 at 1–2.) Plaintiff never filed sealed versions of the documents for which the slip sheets served as placeholders on the public docket. (See Docket Entries dated Apr. 1, 2022, to present.) Upon review of Plaintiff's Unopposed Sealing Motion, the Order stated that the resulting denial of access to Plaintiff's Exhibits frustrated the Court's ability to "determine whether a basis for sealing exists" (Docket Entry 113 at 11). As with the Joint Sealing Motion, the Order noted the lack of evidentiary support for Plaintiff's Unopposed Sealing Motion (to include any filing of supportive materials by Defendant) and the non-compliance with this Court's Local Rules. (See id.) However, in contrast to the Joint Sealing Motion, the

Court denied Plaintiff's Unopposed Sealing Motion without prejudice. (See id. at 11–12.)

Shortly thereafter, Defendant filed the Reconsideration Motion, alerting the Court to an overlooked document. (See Docket Entry 114 at 1–2 (referencing Docket Entry 100).) In that regard, on April 14, 2022, two weeks after the filing of the Joint Sealing Motion and several weeks before the issuance of the Order, Defendant had tendered a response in support of the Sealing Motions (see Docket Entry 100 (the "Response")), accompanied by, inter alia, (i) declarations from two of Defendant's employees (see Docket Entries 100-3, 100-4), and (ii) copies of orders from federal district courts granting Defendant's motions to seal in other actions (see Docket Entries 100-5, 100-6, 100-7). (See Docket Entry 114 at 1–2.)

## DISCUSSION

### I. Relevant Standard

Under the Federal Rules of Civil Procedure, the Court

> may [] revise[,] at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities[,] . . . any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . .

Fed. R. Civ. P. 54(b). As a general matter, "[c]ourts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." Akeva L.L.C. v. Adidas Am., Inc., 385 F.

-4-

Case 1:19-cv-01017-LPA   Document 115   Filed 05/19/22   Page 4 of 20

Supp. 2d 559, 566 (M.D.N.C. 2005). A neighboring court has deemed a motion for reconsideration proper when it "calls [] attention to an argument or controlling authority that was overlooked or disregarded in the original ruling," Davie v. Mitchell, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003).

## II. Analysis

### A. Reconsideration

As grounds for reconsideration, Defendant correctly has asserted that the Order errantly omitted discussion of the Response (see Docket Entry 114 at 4-7). (See Docket Entry 113 at 2 (stating that Defendant failed to file materials in support of Joint Sealing Motion), 11 (faulting both parties for lack of evidentiary support for Plaintiff's Unopposed Sealing Motion).) Accordingly, the Court will grant the Reconsideration Motion insofar as it asks the Court to consider the Response in revisiting its prior rulings on the Sealing Motions (see Docket Entry 114 at 1). After such consideration (and for the reasons explained below), the Joint Sealing Motion still falls short. However, the Court will rescind the denial without prejudice of Plaintiff's Unopposed Sealing Motion and reconsider that filing, together with the Response, after submission of the materials that Defendant has proposed (see id. at 6).

### B. Sealing Motions

According to the Response, after Plaintiff inadvertently disclosed "[Defendant's] confidential information" (Docket Entry 100 at 2 (referencing disclosure on March 2, 2022)) via the public

filing of the Expert Memorandum, Freeman Report, and Freeman Deposition, "the parties worked together and [Defendant] provided redacted copies of [those] documents that could be filed publicly without disclosing any of [Defendant]'s confidential information" (id. (citing Joint Sealing Motion filed March 31, 2022)). However, the redacted version of the Freeman Deposition attached to the Joint Sealing Motion (see Docket Entry 74-4) "contained incomplete redactions" (Docket Entry 100 at 3 n.1), such that Defendant tendered, as an exhibit to the Response (see id. at 3 & n.1), an alternate redacted version of the Freeman Deposition (see Docket Entry 100-2).

Moreover, per the Response, after the filing of Plaintiff's Unopposed Sealing Motion, Defendant determined that four of Plaintiff's Exhibits contained no confidential information. (See Docket Entry 100 at 3-4.) Accordingly, Defendant narrowed the scope of Plaintiff's Unopposed Sealing Motion to three documents:

> (1) Exhibit B-4, the Investigational Device Exemption Clinical Investigation Report for the Altis Single Incision Sling System for Female Urinary Incontinence Study [("Exhibit B-4")];
> (2) Exhibit B-5, the Application for Traditional Premarket Notification 510(k) for Altis Single Incision Sling System [("Exhibit B-5")]; and
> (3) Exhibit B-6, correspondence between Coloplast and the United States Food and Drug Administration ("FDA").

(Id. at 4 (collectively, the "Pertinent Exhibits").)

The Response provides the following information in support of the Sealing Motions:

Defendant has taken measures to safeguard its commercially sensitive information (see Docket Entry 100 at 5-7 (citing Docket

-6-

Entry 100-3, ¶¶ 8-15)), which includes "[i]nformation regarding product development, manufacturing, sales, marketing, clinical, and regulatory efforts" (id. at 5). As a general matter, the interest in protecting trade secrets and other commercially sensitive information can overcome the public interest in access to judicial records, under the common-law and first-amendment standards. (See id. at 7-8.) With respect to the Sealing Motions, the materials that Defendant has sought to redact or seal contain "(1) confidential information pertaining to research and design of [Defendant's] female surgical mesh implants, including the chemical make-up of the polypropylene used, the manufacturing process, [Defendant]'s third-party suppliers and contractors, and [Defendant]'s clinical studies for its devices; and (2) confidential communications with the FDA." (Id. at 8-9.)[2]

Beginning with the former category, Defendant has maintained its request to seal "narrowly redacted passages" (id. at 9) in the Expert Memorandum, Freeman Report, and Freeman Deposition (see id.), as well as the Pertinent Exhibits in their entirety (see id. at 9-10). According to Defendant, courts in North Carolina have shielded "proprietary and trade secret information" (id. at 10) from public view, which authority supports the request to seal "[i]nformation relating to the research and design of [Defendant's] female surgical mesh implants, [its] suppliers and materials, and its internal strategies" (id. (citing SmartSky Networks, LLC v.

---

[2] The Response later clarifies that only the Pertinent Exhibits reveal the latter type of information. (See Docket Entry 100 at 15 n.2.)

-7-

Wireless Sys. Sols., LLC, ___ F. Supp. 3d ___, No. 1:20CV834, 2022 WL 353801, at *11-13 (M.D.N.C. Feb. 7, 2022), appeal filed, No. 22-1253 (4th Cir. Mar. 10, 2022), ATI Indus. Automation, Inc. v. Applied Robotics, Inc., 801 F. Supp. 2d 419, 427–29 (M.D.N.C. 2011), and David v. Alphin, No. 3:07CV11, 2010 WL 1009985, at *2 (W.D.N.C. Mar. 16, 2010) (unpublished))). As further support for the Joint Motion to Seal, Defendant has contended that (i) Defendant's employees and suppliers "fiercely guard[] . . . information regarding [Defendant]'s design and manufacturing processes, and the identity of [its] suppliers" (id. at 10-11 (citing Docket Entry 100-3, ¶¶ 12-14, 24-25)), (ii) "[Defendant]'s suppliers closely guard the source of the materials used, the types of materials used, and the manufacturing processes employed" (id. at 11 (citing Docket Entry 100-3, ¶ 25)), and (iii) "the particular materials used in [Defendant]'s surgical mesh implant devices, including Altis, remain a critical differentiating feature of those devices, setting them apart from other products in the market" (id. (citing Docket Entry 100-3, ¶ 26)).

Additionally, Defendant has explained that it chose "to protect research and design information as trade secrets, rather than in the form of patents . . . because trade secrets, unlike patents, are afforded protection without an expiration date." (Id. (citing Docket Entry 100-3, ¶ 25).) Defendant also has emphasized the "significant investment of capital and human resources to develop its manufacturing process, to determine the design

characteristics of its products, and to develop and maintain relationships with its confidential suppliers and contractors." (Id. at 11-12 (citing Docket Entry 100-3, ¶ 28).) According to Defendant, public disclosure of such information (without compensation to Defendant) would afford its "competitors an unearned advantage" (id. at 12 (citing Docket Entry 100-3, ¶ 28)) and would frustrate "all the efforts [Defendant] has made to ensure [the] confidentiality [of its information]" (id. (citing Docket Entry 100-3, ¶¶ 10-15)).

Finally, Defendant has highlighted the steps it took in this action to protect its commercially sensitive information. (See id. (noting existence of Agreed Protective Order); see also id. at 13 ("Because [Defendant] has taken every step possible to protect its confidential manufacturing and design information and has shown good cause why this information should be sealed, [Defendant] respectfully requests that this Court continue to protect this confidential information by granting [the Sealing] Motions.").)

Turning to the latter category of information, confidential communications with the FDA, Defendant has argued that (i) "[n]o party other than [Defendant] and [the] FDA participated in th[o]se communications" (id. at 14 (citing Docket Entry 100-4, ¶ 21)) and (ii) the FDA has not published "any reports or dockets" (id. (citing Docket Entry 100-4, ¶ 21)) disclosing those communications. (See id. at 13-14.) Regarding the possibility that a request pursuant to the Freedom of Information Act could encompass such information, Defendant has asserted that it retains the ability "to

-9-

review and redact th[o]se types of communications before public disclosure" (id. at 14 (citing Docket Entry 100-4, ¶ 21)). As with the former type of information, Defendant has insisted that, absent sealing, its competitors could glean a (gratuitous) competitive advantage. (See id. at 14-15 (collecting cases).) Moreover, Defendant has indicated that sealing would protect public health because non-disclosure would afford the FDA "full negotiating power rather than having to start from a position that [it] ultimately agreed to during negotiations with [Defendant]." (Id. at 15 (citing Docket Entry 100-4, ¶ 24).)

    1. Joint Sealing Motion

As an initial matter, because Defendant joined Plaintiff in filing the Joint Sealing Motion (see Docket Entry 74 at 1 ("Joint Motion to Seal and File Substitute Documents and Brief in Support" (all-caps font omitted)); see also id. at 1 ("Pursuant to Federal Rule of Civil Procedure 5.2 and the Local Rules of this Court, Plaintiff [] and Defendant [] (collectively, 'parties') request . . ."), 2 ("[T]he parties now seek leave to seal certain [] documents as containing confidential information."), 3 (bearing signatures of counsel for both parties)), this Court's Local Rules obligated both parties (to the extent either or both claimed confidentiality) to file supportive materials on March 31, 2022, contemporaneous with the Joint Sealing Motion. See M.D.N.C. LR 5.4(c)(4)(a) ("If the filing party is the party claiming confidentiality, the materials required in [Local Rule] 5.4(c)(3) must be filed with the motion to seal." (emphasis added)).

-10-

Defendant did not do so.  (See Docket Entries dated Mar. 31, 2022.) Instead, Defendant waited two more weeks before submitting the Response.  (See Docket Entry 100 at 17 (dated Apr. 14, 2022).)[3] Although Defendant's failure to comply with this Court's Local Rules itself warrants denial of the Joint Sealing Motion, see M.D.N.C. LR 5.4(c)(3) ("Failure to file . . . supporting materials will result in denial of the motion to seal and unsealing of the materials without further notice."), the Joint Sealing Motion lacks merit for the following independent reasons.[4]

Without explicitly identifying the standard applicable to the Joint Sealing Motion, Defendant has contended that both "[c]ompelling reasons" (Docket Entry 100 at 8) and "good cause" (id. at 13) support its belated request to redact the Expert

---

[3] In the Reconsideration Motion, Defendant has glossed over its involvement in filing the Joint Sealing Motion by referring to that document as "Plaintiff's First Motion to Seal" (Docket Entry 114 at 1) or "Plaintiff's First Sealing Motion" (id. at 4 (underlining and bold font omitted)).  In the same (flawed) vein, Defendant has characterized the Response as timely "pursuant to Local Rule 5.4(c)(4)(b)" (Docket Entry 114 at 2).  As mentioned in the Order (see Docket Entry 113 at 7), Local Rule 5.4(c)(4)(b) imposes a 14-day deadline to file evidentiary support for a motion to seal, which deadline applies only when the party who files the motion to seal "is not the party claiming confidentiality or is not claiming it as to all of the items," M.D.N.C. LR 5.4(c)(4)(b) (emphasis added).

[4] Additionally, the filing of the Sealing Motions ran afoul of this Court's Local Rules in another way.  "If a motion to seal is filed but no [Local Rule] 5.5 Report has been filed . . . , the parties must meet and confer and file a [Local Rule] 5.5 Report within 10 days of the filing of the motion to seal."  M.D.N.C. LR 5.4(b)(1)(b) (providing that filing of first motion to seal triggers foregoing obligations).  To date, the parties have not demonstrated compliance with those requirements.  (See Docket Entries dated Mar. 31, 2022, to present.)

Memorandum, Freeman Report, and Freeman Deposition.[5] When a request to seal pertains to publicly available information, the proponent of that request faces an uphill battle. See, e.g., Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 579 (4th Cir. 2004) ("[O]nce announced to the world, the information lost its secret characteristic." (internal quotation marks omitted)). Because the common-law presumption of public access to judicial records accounts for "whether the public has already had access to the information contained in the records," In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984), this Court (per the undersigned) has denied motions to seal when litigants sought to retroactively seal information available on the public docket, see, e.g., Mr. Dee's Inc. v. Inmar, Inc., No. 1:19CV141, 2021 WL 3809256, at *3 (M.D.N.C. Aug. 26, 2021) (unpublished) (denying motion to seal information that "remained on the public docket for months before [filing party moved to seal]" in light of failure by party claiming confidentiality "to justify [ ] seal given that prior disclosure"); Cross Creek Seed, Inc. v. Gold Leaf Seed Co., No. 1:16CV1432, 2018 WL 1116565, at *2–5 (M.D.N.C. Feb. 26, 2018) (unpublished) (denying motion to seal information that appeared on public docket for months and noting inconsistent, selective approach to redactions that exposed supposedly

---

[5] As noted in the Order, "[a] neighboring court has applied the common-law standard when evaluating a request to seal documents filed in connection with a motion in limine." (Docket Entry 113 at 9 (citing Lord Corp. v. S & B Tech. Prods., Inc., No. 5:09CV205, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012) (unpublished)).)

-12-

confidential information elsewhere on public docket).[6]  The Order previously deemed Plaintiff's showing insufficient in that regard. (See Docket Entry 113 at 9-10 (citing Morris Hatchery, Inc. v. Interlink Grp. Corp. USA, Inc., No. 10-24480-CIV, 2012 WL 13012495, at *2-3 (S.D. Fla. Apr. 16, 2012) (unpublished) (denying request to seal depositions and filings "quoting those depositions," which allegedly revealed trade secrets, when requesting party failed to explain, inter alia, "why the entire depositions were filed in the public record" or "why nearly two months passed before [the party] asked the [c]ourt to go back and seal those public filings")).)

Although the Reconsideration Motion states that "[the] Response [] explains the reason for the inadvertent initial public disclosure of [Defendant]'s confidential documents" (Docket Entry 114 at 5 (citing Docket Entry 100 at 2-3)), the Response, like the Joint Sealing Motion, merely describes the disclosure by Plaintiff and the subsequent joint effort to seek relief (compare Docket Entry 74 at 1-2, with Docket Entry 100 at 2-3; see also Docket Entry 114 at 5 ("[T]he disclosure . . . was not the fault of [Defendant], and immediately upon [Defendant]'s notice of the violation, the parties conferred in accordance with the [Agreed P]rotective [O]rder and worked jointly to petition the Court for

---

[6] In the latter case, the undersigned denied the motion to seal despite explicitly noting that, "[i]n appropriate circumstances, the protection of confidential business information to prevent unfair competition can constitute a sufficient countervailing interest to overcome the common[-]law presumption of access," Cross Creek Seed, Inc., 2018 WL 1116565, at *4.

-13-

Case 1:19-cv-01017-LPA    Document 115    Filed 05/19/22    Page 13 of 20

relief.")).[7]  Contrary to the suggestion in the Reconsideration Motion, the Response neither establishes that Defendant took action "immediately" (Docket Entry 114 at 5) nor explains (i) why Defendant delayed <u>more than four weeks</u> in seeking to remedy the public disclosure of its supposedly confidential information, (ii) why Defendant waited an additional <u>two weeks</u> to provide evidentiary support for that request, and (iii) how those decisions affect the strength of Defendant's position in advocating to remove information from the public docket.  (See Docket Entry 100 at 1–16.)  For example, Defendant has not identified authority granting retroactive sealing (i.e., by allowing a litigant to seal

---

[7] The Agreed Protective Order states, in relevant part:

> If any party or attorney wishes to file, or use as an exhibit or as testimonial evidence at a hearing or trial, any CONFIDENTIAL or HIGHLY CONFIDENTIAL material, such party must provide reasonable notice to the producing party of the intended use of such information.  The parties shall then attempt to resolve the matter of continued confidentiality by either (a) removing the CONFIDENTIAL or HIGHLY CONFIDENTIAL marking, (b) creating a mutually acceptable redacted version that suffices for purposes of the case, or (c) conferring about methods to avoid or limit public disclosure of such information during testimony.  In the event that the parties are unable to meet-and-confer in advance regarding the appropriate method for filing documents containing or attaching CONFIDENTIAL or HIGHLY CONFIDENTIAL materials, the party seeking to file such documents may file a redacted pleading containing placeholder exhibits identifying by Bates number the documents containing CONFIDENTIAL or HIGHLY CONFIDENTIAL information that would have been used as exhibits, to be supplemented with redacted or de-designated exhibits in the record after the parties have agreed upon the appropriate method for filing these documents.

(Docket Entry 29 at 13–14.)

information already part of the pubic record).  (See id.)  Even if, absent the disclosure by Plaintiff, Defendant would possess an adequate justification for sealing limited portions of the Expert Memorandum, Freeman Report, and Freeman Deposition, the Court cannot ignore the extent to which public disclosure already has occurred.

Furthermore, the Joint Sealing Motion, as modified by the Response (see Docket Entry 100 at 3 & n.1)), suffers from another flaw as it relates to the Freeman Deposition.  Specifically, despite Defendant's belated tender of an alternate redacted version of that document (see Docket Entry 100-2), no party has moved to seal the improperly redacted version that has remained on the public docket since March 31, 2022 (see Docket Entry 74-4).  (See Docket Entry 100 at 3, 16; see also Docket Entry 100-1 at 1–2 (proposed order directing clerk to "maintain under seal . . . the [Freeman D]eposition [], which may be substituted on the public record with the redacted version [accompanying the] Response" (citing Docket Entries 65-2 and 100-2, respectively).)  In other words, Defendant has failed to seek relief as to another (public) version of the Freeman Deposition that reveals supposedly confidential information, without "provid[ing ] an explanation of th[at] inconsistent treatment []or a justification for such selective redaction," Cross Creek Seed, Inc, 2018 WL 1116565, at *4.[8]

---

[8] Even if the Court construed the Response as seeking to seal the version of the Freeman Deposition attached to the Joint Sealing (continued...)

At bottom, the Response does not undermine the conclusion that the pertinent portions of the Expert Memorandum, Freeman Report, and Freeman Deposition ceased to warrant protection from disclosure when Plaintiff filed those materials on the public docket and neither party took prompt corrective action. Because Defendant has not confronted (much less overcome the significance of) the fact that, for weeks, "the public [] enjoyed unfettered access to the entire Expert Memorandum, Freeman Report, and Freeman Deposition" (Docket Entry 113 at 9), the Court will deny the Reconsideration Motion insofar as it asks the Court to grant the Joint Sealing Motion.

---

[8](...continued)
Motion, Defendant has not offered sufficient justification for sealing that information notwithstanding the six weeks that elapsed between Plaintiff's initial public filing and Defendant's provision of a properly redacted version. (See Docket Entry 100 at 1-16.)

2. Plaintiff's Unopposed Sealing Motion[9]

The Response purports to provide evidentiary support for Plaintiff's Unopposed Sealing Motion without acknowledging or remedying the fact that Plaintiff neglected to file the Pertinent Exhibits under temporary seal. (See Docket Entry 100 at 16 ("[Defendant] respectfully requests that the Court grant Plaintiff's Unopposed [Sealing] Motion [], which would permit the

---

[9] It bears noting that (i) Plaintiff filed the Summary Judgment Memorandum on the public docket without redactions (see Docket Entry 96), (ii) the Summary Judgment Memorandum contains citations to the Pertinent Exhibits (see id. at 11, 13, 14), (iii) at least one of those citations results in the public disclosure of information derived from the Pertinent Exhibits (see, e.g., id. at 13 ("In the training program, [Defendant] provided draft IFU in the Altis 510(k), stating that 'The IFU will be the foundation of the training program.'" (citing, inter alia, confidential Exhibit B-4 (Docket Entry 95-8))); see also, e.g., Docket Entry 95-21 at 75 & n.325 (attributing foregoing quotation in publicly filed exhibit to document identified in Summary Judgment Memorandum as confidential Exhibit B-5 (Docket Entry 95-9))), and (iv) neither Plaintiff's Unopposed Sealing Motion nor the Response conveyed a request to redact quotation from or discussion of the Pertinent Exhibits in the Summary Judgment Memorandum (see Docket Entry 97 at 1–3; Docket Entry 100 at 1–16). In other words, the request to seal the Pertinent Exhibits in their entirety does not square with the manner in which Plaintiff filed the Summary Judgment Memorandum, revealing at least some information that Defendant has characterized as confidential. That disclosure, when paired with the failure by either party to seek relief regarding the Summary Judgment Memorandum, undermines Plaintiff's Unopposed Sealing Motion as it pertains to information that has appeared on the public docket since at least April 1, 2022. Additionally, in light of the relatively sparse citations to the Pertinent Exhibits in the Summary Judgment Memorandum, the Court draws the parties' attention to the following Local Rule:

> "Sealed documents should not be filed unless necessary for determination of the matter before the Court. If only non-confidential portions of a document are necessary, only those portions should be filed, immaterial portions should be redacted, and no motion to seal should be filed."

M.D.N.C. LR 5.4(a)(3).

filing under seal of [the Pertinent Exhibits].").)[10]  As explained in the Order, the Court cannot evaluate Plaintiff's Unopposed Sealing Motion without access to the Pertinent Exhibits (see Docket Entry 113 at 11), and the Court cannot access the Pertinent Exhibits absent compliance with the Local Rules, which require (in connection with every motion to seal) "two complete sets of documents, one public and one under temporary seal," M.D.N.C. LR 5.4(c)(8).  (See Docket Entry 113 at 8 (citing foregoing Local Rule), 10-11 (noting violation of foregoing Local Rule).)  The Court "den[ied Plaintiff's Unopposed] Sealing Motion without prejudice" (id. at 11 (emphasis added)) to allow the parties another opportunity to submit a proper, compliant motion to seal.

Given Defendant's instant request "for leave to file . . . the required Local Rule 5.4 checklist, as well as sealed, unredacted versions of the [Pertinent Exhibits]" (Docket Entry 114 at 6), the Court will rescind the denial without prejudice of Plaintiff's Unopposed Sealing Motion, pending the filing of the materials that Defendant has proposed to file.[11]

---

[10] Contrary to Defendant's assertion, Plaintiff's ability to file the Pertinent Exhibits under seal, in the first instance, does not hinge on "permi[ssion]" (id.) or any grant of authority by the Court.  Instead, this Court's Local Rules obligated Plaintiff to file, under temporary seal, "the underlying documents for which sealing is sought," M.D.N.C. LR 5.4(c)(8).  That procedure protects sensitive documents during the pendency of a motion to seal while allowing the Court necessary access to the relevant information.

[11] To the extent the Reconsideration Motion expresses doubt about which party should file the required materials (see Docket Entry 114 at 6), this Court's Local Rules provide that a party who files a motion to seal must submit, under temporary seal, "the underlying documents for which sealing is sought," M.D.N.C. LR
(continued...)

**CONCLUSION**

Because the Court (per the undersigned) overlooked (and, for that reason, omitted discussion of) the Response in connection with its review of the Sealing Motions, reconsideration should occur. However, as concerns the Joint Sealing Motion, the Response offers nothing more than untimely, inadequate support, given that weeks of public disclosure preceded any corrective action by either party. Plaintiff's Unopposed Sealing Motion stands on slightly different ground, as it appears that only limited inadvertent public disclosure has occurred to this point. The previous denial of Plaintiff's Unopposed Sealing Motion stemmed from Plaintiff's failure to file the Pertinent Exhibits under temporary seal, a step that the Local Rules require and the parties remain free to take. In light of the Reconsideration Motion, the Court will consider the Response in connection with all pertinent materials in support of Plaintiff's Unopposed Sealing Motion.

**IT IS THEREFORE ORDERED** that the Reconsideration Motion (Docket Entry 114) is **GRANTED IN PART**, such that the Court will consider the Response in revisiting its prior rulings and the parties may file the required materials in support of Plaintiff's

---

[11](...continued)
5.4(c)(8), as well as "a [] Checklist and Summary Chart to the assigned district judge's ECF mailbox within 3 business days of the filing [of the motion to seal]," M.D.N.C. LR 5.4(c)(6). See also M.D.N.C. LR 5.4 comment. (checklist requiring confirmation that documents under temporary seal contain "highlight[ing] to show what was redacted from the publicly[]filed document(s)"). Accordingly, Plaintiff bore that obligation in connection with Plaintiff's Unopposed Sealing Motion, but Defendant, pursuant to its request in the Reconsideration Motion, may provide the required materials.

Unopposed Sealing Motion (which the Court will consider anew), but **DENIED IN PART** as to all other requests for relief.

                                             /s/ L. Patrick Auld
                                                  **L. Patrick Auld**
                                       **United States Magistrate Judge**

May 19, 2022